# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MILES LEWIS,

                            Petitioner,

       v.                                9:14-CV-1411
                                                (DNH/ATB)

T. GRIFFIN, Superintendent

                            Respondent.

MILES LEWIS, Petitioner, pro se
MICHELLE ELAINE MAEROV, AAG, for the Respondent
ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable David N. Hurd, United States District Judge.

Presently before this court is a petition, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Petition ("Pet.")) (Dkt. No. 1). Petitioner challenges a judgment of conviction, dated March 25, 2009, rendered after a jury found him guilty of First Degree Burglary; First Degree Attempted Robbery; Second Degree Assault; and Endangering the Welfare of a Child. (Petition "Pet" at ¶¶ 3-5, 7) (Dkt. No. 1). Petitioner was sentenced to 12 years of incarceration, followed by 5 years of post-release supervision. (Pet. ¶ 4). The Appellate Division, Third Department affirmed his conviction on October 25, 2012, and the New York Court of Appeals denied leave to appeal on July 16, 2013. *People v. Lewis*, 99 A.D.3d 1104, 952 N.Y.S.2d 309 (3d Dep't 2012), *lv. denied*, 21 N.Y.3d 1017, 971 N.Y.S.2d 499 (2013). Petitioner filed a motion to vacate his judgment pursuant to N.Y. Crim. Proc. Law § 440.10 which was denied on

January 3, 2012 by the Hon. Robert N. Jacon, Rensselaer County Court Judge. (State Court Records ("SR")[1] at 67-69). On April 6, 2012, the Appellate Division, Third Department denied plaintiff leave to appeal from the denial of his motion to vacate. (SR at 77).

Petitioner also moved in the Appellate Division for coram nobis relief, alleging ineffective assistance of appellate counsel. (SR at 229). The Appellate Division, Third Department denied petitioner's motion on April 8, 2014, and the New York Court of Appeals denied leave to appeal on July 14, 2014. (SR at 228, 230).

Petitioner raises the following claims for this court's review:

1. The trial court erroneously denied petitioner a "missing witness charge." (Pet. Grd. 1).

2. The trial court erred in failing to require a "written communication" when the jury foreperson expressed doubt about serving as the foreperson, and he was replaced with another juror. (Pet. Grd. 2).

3. The conviction was against the weight of the evidence. (Pet. Grd. 3).

4. Petitioner was denied the effective assistance of counsel on appeal. (Pet. Grds. 4, 5, 6, 7, 8).

5. Petitioner was denied the effective assistance of counsel at trial. (Pet. Grds. 9, 10).

Respondent argues for denial of the petition, claiming that petitioner has failed to

---

[1] Respondent has filed a memorandum of law in opposition to the petitioner's application, together with the pertinent state court records. The state court records are numbered at the bottom of the page with the letters "SR" and a number. (Dkt. No. 11). The court will cite to the state court records as numbered by the respondent. However, the trial transcript is broken down into three volumes, with the page numbers appearing at the top right hand corner of the page. The court will cite to the trial transcript with the original page citations, including the volume number   1, 2, or 3.

exhaust his state court remedies, several claims are also barred by procedural default, and that none of his claims have merit. (Dkt. No. 11-1). For the following reasons, this court finds that the petition may be denied and dismissed.

## DISCUSSION

### I. FACTS

The petitioner and Christian McGrath met while they were both incarcerated in the Albany County Jail. After both men were released from prison, Mr. McGrath began a business, in which, among other things, he purchased and sold cars. Petitioner answered an ad on Craig's List for the sale of a truck and discovered that the seller was Mr. McGrath. When the petitioner went to Mr. McGrath's home to do the paperwork for the sale of the truck, he noticed that Mr. McGrath was renovating his kitchen, and offered to perform some of the necessary electrical work for him. Ultimately, petitioner also helped Mr. McGrath with his automotive business. The two men saw each other frequently, spoke to each other every day, and their children socialized on occasion. Because of his frequent visits to the McGrath home, petitioner was well-aware of the layout and the fact that, due to the nature of his work, Mr. McGrath kept large sums of cash in his home.

At approximately 2:00 am on the morning of July 20, 2008, Mr. McGrath was sleeping in his twelve-year-old son's room, while his son was watching the Wide World of Poker on television. The only light in the room came from the television screen and a computer screen. Mr. McGrath's daughter was down the hall in her room. Mr. McGrath woke to find three individuals, dressed in black, wearing black "hoodies" and

black bandanas across their faces, covering up to their noses. The three individuals ripped down the curtains, grabbed Mr. McGrath's son, stuck a t-shirt in his mouth, and held a gun to his head. One of the men stood over Mr. McGrath and repeatedly hit him with a handgun, while asking where the "money" was. Mr. McGrath looked at his attacker and recognized him as the petitioner based upon his glasses and his voice.

Somehow, Mr. McGrath managed to get off the bed, free himself from his attacker, drag one of the other intruders out of the room, break a window, and scream for help. When Mr. McGrath began screaming for help, the three intruders ran out of the house. Mr. McGrath heard a motorcycle taking off after the intruders had left the house. Mr. McGrath was bleeding heavily, so he got himself a towel before calling 9-1-1.

Several officers from the Troy Police Department responded to the 9-1-1 call. The officers secured the home and began searching around the area. The officers found a black bandana in the next-door neighbor's yard. The bandana was tested, and it was determined that there was a mixture of DNA on the bandana which was consistent with the petitioner's DNA. Mr. McGrath received medical treatment for his injuries and gave a report to the police. On August 29, 2008, a Rensselaer Grand Jury indicted petitioner. At trial, petitioner was represented by Michael D. Jurena. Prior to trial, petitioner's counsel was successful in having one of petitioner's statements suppressed.

Both Mr. McGrath and his young son testified at the trial. They described the events of July 20, 2008 in detail, and they both identified petitioner as one of the intruders, based on his voice and his glasses. Mr. McGrath testified that when he

4

awoke, he immediately recognized the petitioner and asked him "Miles, what the fuck are you doing here?" (McGrath: T. 2, 42. *See also* A.M.:[2] T. 3, 24). Mr. McGrath also testified that, as petitioner was hitting him with the handgun, he asked: "Chris, where the fuck is the money?" (McGrath: T. 2, 41-42, 45-46. *See also* AM: T. 3, 22, 24).

Two of the officers who responded to the scene of the burglary testified at the trial. Officer Mark Mallory responded to the scene and found Mr. McGrath out of breath, excited, and bleeding. (T. 2, 203). Officer Mallory testified that, within the first few minutes that he was on the scene, Mr. McGrath named petitioner as one of the perpetrators, however, Mallory was not the officer who actually interviewed Mr. McGrath. (T. 2, 205).

Sergeant Matthew Montanio also responded to the McGrath home on July 20, 2008. When he arrived at approximately 2:00 am, Officer Malloy and Officer Negron were already on the scene. (T. 2, 172-73). When Sergeant Montanio arrived, he saw Mr. McGrath sitting on the front steps of his home, bleeding and holding a cloth to his head. (*Id.*) Sergeant Montanio testified that he found the black bandana in the next-door neighbor's yard on the ground along the fence which ran in between the homes. (T. 2, 174-75). Sergeant Montanio asked Mr. McGrath if he knew who broke into his home, and Mr. McGrath mentioned the name "Miles." (T. 2, 176).

On cross-examination, Sergeant Montanio testified that when Mr. McGrath mentioned the name "Miles," Sergeant Montanio volunteered the last name "Lewis." (T. 2, 184). Sergeant Montanio stated that he mentioned the name "Lewis" after Mr.

---

[2] The court will use Mr. McGrath's son's initials.

McGrath's description of the individual and testified that he had previously arrested the petitioner. (T. 2, 185). Defense counsel asked Sergeant Montanio questions about the police report, noting that the report does not mention "glasses," tattoos, or facial hair. (T. 2, 191). The report also stated that the suspects were "unknown." (*Id.*) However, Sergeant Montanio testified that Officer Negron completed the report with Mr. McGrath at the hospital. (T. 2, 192). The other officers who testified were evidence technicians who were responsible for the chain of custody of the bandana which was sent to the laboratory for DNA analysis. (T. 240-62).

The prosecution also presented the testimony of the two individuals responsible for the DNA analysis of the black bandana. Michelle Maura isolated the portions of the bandana that would likely contain samples of DNA, and Andrea Allard completed the analysis by comparing samples of DNA found on the bandana with a buccal swab taken from petitioner. (T. 2, 263-85 (Maura), 286-345 (Allard)). Ms. Allard stated that the petitioner could not be "excluded" as a possible contributor to the DNA mixture profile. (T. 2, 324). This language meant that she determined that there was a mixture of DNA on the bandana with at least two donors, but that the petitioner's genetic profile was present at each location. (T. 2, 325).

Petitioner attempted to establish an alibi through the testimony of his girlfriend, Karla Washington. Ms. Washington testified that on the night of July 19, 2008, she went to bed at approximately 10 or 11 pm with the petitioner next to her. (T. 3, 61-63, 76, 85). Ms. Washington stated that she did not wake up during the night, and when she woke up the next morning at 6:30 am, the petitioner was still next to her, but his

motorcycle was gone. (T. 3, 77-79, 86).  Ms. Washington stated that the petitioner's

nephew had his motorcycle. (*Id.*)  Ms. Washington acknowledged that the petitioner

had multiple felony convictions and that he was on parole on July 20, 2008. (T. 3, 64-

54, 84).

Ms. Washington testified that after the incident, she accused Mr. McGrath of

calling her several times and harassing her. (T. 3, 82-83).  She filed a police report

against him and obtained an order of protection based on those telephone calls. (T. 3,

83).  On cross-examination, Ms. Washington acknowledged that her telephone records

only showed two telephone calls from Mr. McGrath. (T. 3, 92-93).  She also

acknowledged that in the two-page statement that she gave to the police regarding this

alleged harassment, she never mentioned that petitioner was home with her, even

though she told the police that petitioner was falsely arrested for the burglary. (T. 3, 97-

98).  In fact, during the time that petitioner was arrested and in custody, she never

mentioned to the police that he was home with her during the time in question. (T. 3,

98-101).  The harassment charges against Mr. McGrath were adjourned in

contemplation of dismissal. (T. 3, 104-105).

The jury found petitioner guilty of all charges on March 25, 2009. (T. 3, 260-70).

## II.   EXHAUSTION/PROCEDURAL DEFAULT

### A.   Legal Standards

#### 1.   Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust

available state remedies, . . . thereby giving the State the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

## 2.    Procedural Default

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule

applies whether the independent state law ground is substantive or procedural. *Id*.

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

In addition, if the court finds that petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims would then be "deemed" exhausted,

but would be barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). As stated above, a state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

## B. Application

### 1. Missing Witness Jury Charge (Ground 1)

Petitioner argues that the court erroneously denied counsel's request for a missing witness jury charge as to the two "lead detectives" in petitioner's case. Although the prosecutor called two of the officers who responded to the 9-1-1 call as witnesses at trial, the prosecutor did not call Detectives Fountain and Epstein, who arrived at the scene approximately one hour after the other officers and were subsequently involved in the investigation.

Petitioner raised this claim in his direct appeal to the Appellate Division. (SR at 103-107). However, the petitioner argued only that the court did not follow state law standards in denying the request. Petitioner cited no federal cases, nor did he cite New York State cases which employed federal constitutional analysis. There is no federal constitutional right to a missing witness jury charge. *See Morales v. Strack*, No. 99-CV-1617, 2003 WL 21816963, at *4 (E.D.N.Y. July 3, 2003) ("Petitioner can point to no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness."). Thus, the claim does not "automatically" bring to mind a right protected by the federal constitution.

In a case with almost identical facts, a court in the Western District of New York held that the petitioner did not exhaust his "missing witness" jury charge claim when he argued only that the court failed to properly apply the state law standard for a missing witness charge set forth in *People v. Gonzalez*, 68 N.Y.2d 424, 509 N.Y.S.2d 796, 502 N.E.2d 583 (1986). *Hawkins v. Graham*, No. 1:12-CV-643, 2014 WL 317842, at *4 (W.D.N.Y. Jan. 29, 2014). The petitioner in *Hawkins* also failed to cite amendments or provisions of the United States Constitution and did not reference federal constitutional principles such as "'denial of due process' or 'denial of the right to a fundamentally fair trial.'". *Id.* (citing *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992)). The *Hawkins* court distinguished *Reid* in which the court found that the petitioner had exhausted his state court remedies with respect to a missing witness charge claim because in his state court pro se supplemental appellate brief,[3] he specifically cited the Fourteenth

---

[3] The court also noted that a pro se supplemental brief, when properly submitted to the state court, "puts that court on notice of the constitutional claims addressed in the brief." 961 F.2d at 376

Amendment. *Reid, supra*. In *Reid*, the Second Circuit stated that, although it would be "better practice for counsel when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases 'a minimal reference to the Fourteenth Amendment satisfies the exhaustion requirement.'" *Id.* (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 423 (2d Cir. 1991)).

In this case, as in *Hawkins*, the petitioner did not mention the federal constitution in his brief to the Appellate Division, and he argued only state law in his application for leave to appeal to the New York Court of Appeals. (SR at 143-45). Thus, petitioner has failed to exhaust his state court remedies with respect to his missing witness charge.

Because the missing witness jury instruction claim is "record-based," it was appropriately raised on direct appeal. Petitioner cannot now return to state court to exhaust his missing witness jury charge claim. He has already filed a direct appeal. He cannot return to the Court of Appeals because New York permits only one application for direct review. *Oquendo v. Senkowski*, 452 F. Supp. 2d 359, 368 (S.D.N.Y. 2006) (citing *Spence v. Superintendent*, 219 F.3d 162, 169-70 (2d Cir. 2000); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)); N.Y. Rules of Court, Court of Appeals § 500.20. Petitioner would also be unsuccessful in again moving to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 because the claim would be dismissed due to petitioner's unjustifiable failure to raise the record-based federal claim on direct appeal. *Id.* § 440.10(2)(c). This procedural bar is independent and adequate, and is

---

(citing *Abdurrahman v. Henderson*, 897 F2d 71, 73 (2d Cir. 1990)).

consistently applied. *See Clark v. Perez*, 510 F.3d at 393 (discussing § 440.10(2)(c)).

Thus, petitioner's missing witness jury charge claim is "deemed exhausted," but is also barred by procedural default. Petitioner would have to show cause for his failure to raise the claim using federal constitutional analysis and would have to show prejudice resulting from the constitutional violation. Petitioner has failed to meet either prong of this part of the procedural default analysis.

Ineffective assistance of counsel may suffice to show cause to excuse a procedural default. *Hawkins v. Graham*, 2014 WL 317842 at *6 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). However, petitioner would have to separately exhaust an ineffective assistance of counsel claim in order to allege that his appellate attorney's failure to raise the issue on appeal was "cause" for his procedural default. *See id.* (a claim of ineffective assistance of counsel must generally be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default).

In this case, although in his coram nobis application, petitioner has claimed ineffective assistance of appellate counsel with respect to his Appellate Division attorney, he did not raise a claim that his appellate attorney was ineffective in failing to raise the federal constitutional nature of his missing witness claim. The fact that ineffective assistance was mentioned in one context does not suffice to alert the court to all possible bases for ineffective appellate counsel. *Twitty v. Smith*, 614 F.2d 325, 332 (2d Cir. 1979). Thus, petitioner has not shown "cause" for his failure to exhaust his missing witness charge claim in state court, and the court need not discuss prejudice.

To qualify for the fundamental miscarriage of justice exception, the petitioner must have a claim of "actual innocence that is both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 521, 538 (2006)). A petitioner's conclusory and unsupported assertion that he is innocent does not meet this demanding standard. *Id. See also Hawkins*, 2014 WL 317842 at *6 (Hawkins' conclusory and unsupported assertion that he is innocent plainly does not come close to meeting this demanding standard.) In order to show actual innocence, the petitioner must come forward with new, reliable evidence that was not presented at trial. *Id.* (citing *House*, 547 U.S. at 537, 538). Petitioner in this case has always maintained his innocence, asserting an alibi defense though his girlfriend's testimony. However, the jury made credibility determinations and found petitioner guilty. The DNA evidence found on the black bandana corroborated the victims' testimony. Petitioner has failed to come forward with new, credible, and compelling evidence to support the fundamental miscarriage of justice exception to the procedural bar. Thus, petitioner's jury instruction claim may be dismissed.

## 2. Juror Inquiry (Ground 2)

Petitioner argues that the trial court erred in failing to require a written statement from the jury foreperson, who during jury deliberations, expressed that he did not wish to serve in that role. Petitioner raised this claim on direct appeal as a violation of N.Y. Crim. Proc. Law § 310.30, basing his argument on *People v. O'Rama*, 78 N.Y.2d 270 (1991) and *United States v. Ronder*, 639 F.2d 931 (2d Cir. 1981). (SR at 108-112). In her response, the Assistant District Attorney argued that the claim was not preserved for

review and was meritless in any event. (SR at 125-29). In its decision, the Appellate Division dismissed this claim based upon the petitioner's procedural default alone – "Finally, defendant's challenge to County Court's response to a written communication from the jury was not preserved for review because he made no objection to that response." 99 A.D.3d at 1104 (citing N.Y. Crim. Proc. Law § 470.05(2) (outlining the proper way to preserve an objection)).

In his application for leave to appeal to the New York Court of Appeals, petitioner's attorney focused only on the missing witness issue. However, he also asked that the court consider "all issues raised in Appellant's Brief." (SR at 142). Thus, the issue was presented to both the Appellate Division and the Court of Appeals. Because petitioner did not present the issue in a federal constitutional context, the claim is unexhausted. More importantly, the Appellate Division specifically relied upon a procedural default in dismissing this claim on appeal. The New York Court of Appeals denial of leave to appeal would have left the Appellate Division's finding undisturbed. Thus, whether this court finds the claim exhausted or not, the claim is still barred by procedural default.

Petitioner argues that the procedural default rule should not apply in this situation because the court in *People v. O'Rama* specifically stated that the juror communication claim did not need to be preserved by a contemporaneous objection. (Pet. Mem. of Law at 30) (Dkt. No. 1-1). Petitioner may be attempting to claim that the use of the procedural default by the Appellate Division was "exorbitant," necessitating review under *Cotto*. One of the *Cotto* factors involves determining whether state

caselaw indicated that compliance with the rule was demanded in the specific circumstances presented. 331 F.3d at 240. Although the court in *O'Rama* stated that no objection was required to preserve a jury note issue, cases subsequent to *O'Rama* have held that preservation is required when counsel is given the opportunity to "meaningfully participate." *See Munoz v. Burge*, No. 02-CV-6198, 2010 WL 3394696, at *11-12 (E.D.N.Y. Aug. 20, 2010) (citing *People v. Cintron*, 273 A.D.2d 84, 709 N.Y.S.2d 67, 68 (1st Dep't 2000); *People v. Neal*, 268 A.D.2d 307, 701 N.Y.S.2d 393, 394 (1st Dep't 2000) (rejecting *O'Rama* claim as unpreserved because "although one portion in the jury's second note to the court was not read into the record, counsel was aware of the second note's existence and was not deprived of an opportunity to read it")).

Another *Cotto* factor is whether the petitioner "substantially complied" with the procedural rule. *Cotto, supra*. In this case, both counsel were given the opportunity to object to the change in foreperson and both counsel specifically stated that they had no objection. Finally, this is one of those cases in which the claim of error is to a "ministerial matter" involving the jury.[4] There was also no objection to the method that was used to convey the foreperson's request, and thus, the Appellate Division's use of the contemporaneous objection rule was not "exorbitant."

---

[4] The cases cited by the petitioner in his habeas application involve instances in which the juror's communication dealt with a substantive issue in the trial. *See e.g. Rogers v. United States*, 422 U.S. 35 (1975) (jury note asked the judge whether the court would accept a verdict of "Guilty as charged with extreme mercy of the Court," and the judge failed to notify the petitioner or his counsel before responding to the jury). In *O'Rama*, the court held that when a jury question was "substantive," it was reversible error to fail to disclose the notes contents before responding. 78 N.Y.2d at 274-79. The note in *O'Rama* involved continued disagreement among the jurors. *Id.* at 275.

When the trial court received information that the jury foreperson was uncomfortable continuing in that role,[5] the judge discussed it on the record with the attorneys present. (T. 3, 250-51). When the court told counsel that the foreman "doesn't want to be the foreman," petitioner's counsel said "Let them pick somebody." (T. 3, 250). Petitioner was then brought into the room. The court explained that the foreperson did not want to continue serving in that capacity, and "the jury has suggested that the juror sitting in seat number five, . . . can serve in that capacity." (T. 3, 251). The judge specifically asked each attorney whether there was an objection to this procedure, and both counsel responded "No, your honor." (*Id.*) It is clear that petitioner's counsel did not intend to object to the change of foreperson, and that each side had the opportunity to discuss the matter prior to the judge allowing the substitution of a new foreperson. Thus, petitioner's "juror inquiry" claim is barred by procedural default, absent cause and prejudice.

Petitioner has shown neither cause nor prejudice for his default. The only option for "cause" in this situation would be to claim that counsel was ineffective for failing to "object" to the fact that the foreperson's request was not "in writing." Petitioner has never raised this basis for ineffective counsel in any venue, and thus, he may not raise ineffective assistance of counsel as cause for his procedural default. In any event, petitioner has shown absolutely no prejudice as a result. The trial court discussed the issue with all parties present, and the reason for the foreperson's desire to step down

---

[5] The court notes that the jury foreperson was chosen automatically because he was "Juror Number One." (T. 3, 238). The trial court explained this rule to the jurors, stating that "Under our criminal Procedure [sic] law, it is provided that the juror whose name is first drawn and called must be designated as your foreperson." (*Id.*)

did not appear to be related to the facts of the trial. As stated above, there is no basis for the miscarriage of justice exception to procedural default. Thus, petitioner's second claim may be dismissed.

### 3. Weight of the Evidence (Ground 3)

Petitioner argues that the verdict in this case was against the weight of the evidence. (Pet. at 6, Mem. of Law at 31-36). Respondent argues that petitioner has failed to exhaust this claim, it is procedurally barred, it is not cognizable on habeas review, and is meritless. (Resp.'s Mem. of Law at 21-23). On direct appeal, petitioner argued that "THE CONVICTIONS WERE AGAINST THE WEIGHT OF THE EVIDENCE." (SR at 112-16). The argument focused on the New York standard for weight of the evidence review. In fact, counsel specifically stated "[r]eview of the weight of the evidence goes well beyond the question of the legal sufficiency of the evidence, and compares the probative value of the testimony and the inferences it is possible to draw therefrom." (SR at 115) (citing *People v. King*, 265 A.D.2d 678 (3d Dep't 1999); *People v. Carthens*, 171 A.D.2d 387 (1st Dep't 1991)). It appears from this statement that counsel was not making a federal, constitutional "legal sufficiency" claim in state court. The Appellate Division considered the claim solely on the merits of the state law standard. 99 A.D.2d at 1104.

Under New York State law, a "weight of the evidence" claim and a "legal sufficiency" claim are related, but have distinctly different standards. *See People v. Bleakley*, 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). A claim that the verdict is against the "weight of the evidence" is a purely state law claim, based upon

N.Y. Crim. Proc. Law § 470.15, whereas a legal sufficiency claim is based upon federal constitutional principles. *See Garbez v. Greiner*, No. 01 Civ. 9865, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) (citing *People v. Bleakley*, 69 N.Y.2d 490, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987)). Thus, to the extent that petitioner is raising a claim that the verdict was "against the weight of the evidence," it is not cognizable in federal habeas corpus and should be dismissed.

Petitioner recognizes that his weight of the evidence claim is not a federal constitutional issue and cites various cases where the court dismissed claims based on the weight of the evidence as not cognizable. (Pet. Mem. of Law at 31-32) (citations omitted). Petitioner then asks that this court "construe this claim as a 'sufficiency of the evidence' argument and consider it as such. (*Id.* at 32). Even if this court were to consider the weight of the evidence claim in the petition as a sufficiency claim, the sufficiency claim – although now cognizable – would be unexhausted. Petitioner never raised a federal sufficiency of the evidence claim in state court. Although in one sentence of the prosecutor's appeal brief, she states that the "People submit that the convictions did not outweigh the evidence in this case and that the People proved each and every element of each and every crime beyond a reasonable doubt," there is no citation to any federal case law or federal constitutional provisions. The rest of the prosecutor's argument focuses on credibility and ends with the statement that the verdict was not against the weight of the evidence, citing three New York State cases. (SR at 135) (citing *People v. Hull*, 71 A.D.3d 1336, 1337 (3d Dep't 2010); *People v. Smith*, 66 A.D.3d 1223, 1224 (3d Dep't 2009); *People v. Alteri*, 49 A.D.3d 918, 920 (3d

Dep't 2008)). Thus, the prosecutor's brief alone was not sufficient to alert the state court to a federal constitutional claim.

The cases cited by petitioner involve situations in which the petitioners argued sufficiency of the evidence in addition to weight of the evidence in state court, but then asserted only a weight of the evidence claim in their habeas corpus petitions in federal court. *See e.g. Davis v. McLaughlin*, 122 F. Supp. 2d 437, 440, 441 (S.D.N.Y. 2000). Although petitioner states that the court in *Davis* "treated" petitioner's weight of the evidence claim as a sufficiency claim, the page citation provided by petitioner does not exactly stand for that proposition. In *Davis*, the court stated that "Petitioner claims that his conviction was against the weight of the evidence and that the People did not prove his guilt beyond a reasonable doubt." *Id.* at 441. It was reasonable to assume that petitioner's claim asserted both bases for review. In addition, earlier in the decision, the court stated that "[i]n his direct appeal, petitioner raised three grounds: (1) the People had not proven his guilt beyond a reasonable doubt on the burglary charge; (2) his conviction was against the weight of the evidence; and (3) he was mistakenly sentenced as a predicate felon." *Id.* at 441. The mention of conviction "beyond a reasonable doubt" is the basis of a sufficiency claim.[6] Thus, the federal court in *Davis* did not have any difficulty in inferring that the pro se petitioner was attempting to raise both a weight and a sufficiency claim in his habeas petition. *See also Wilson v.*

---

[6] In *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), the court stated the basis for a sufficiency of evidence claim by holding that in a challenge to a state criminal conviction, the petitioner is entitled to habeas corpus relief if it is found that, upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Senkowski*, No. 02 Civ. 231, 2003 WL 21031975, at *6-8 (S.D.N.Y. May 7, 2003) (court broadly interpreted the petition as raising a sufficiency claim, after recommending denial of the weight claim as non-cognizable because, on appeal, petitioner alleged that the "weight of the evidence was insufficient to prove the requisite intent" for the crime – the petitioner's reference to proof of intent could have been sufficient to exhaust a sufficiency claim).

Petitioner in this case made no such references in his state court papers. In fact, the entire argument focused upon a challenge to the credibility of the prosecution's witnesses. Thus, even if this court were to interpret petitioner's weight of the evidence claim in his federal petition as a sufficiency claim, the claim would be unexhausted and subject to procedural default.[7] Petitioner has shown no cause nor any prejudice to overcome the procedural bar, and to the extent that the court interprets petitioner's claim as one challenging sufficiency of the evidence, it may also be dismissed.[8]

---

[7] To the extent that the sufficiency claim is "unexhausted," the petitioner would have no avenue in state court to exhaust the claim. Petitioner raised the weight of the evidence claim on appeal, and if he attempts to bring another motion to vacate, the court would either deny the claim because the Appellate Division has already decided the issue or more likely, to the extent that he brings a sufficiency claim that is different than the weight of the evidence claim, a motion to vacate would be denied based on the fact that petitioner unjustifiably failed to raise the issue on appeal    a procedural default. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Petitioner has not shown cause for his failure to raise the sufficiency issue on appeal while he was raising his weight of the evidence claim. Thus the sufficiency claim would be barred by procedural default.

[8] Even if the court were to address the merits of a "sufficiency" claim, the petitioner's claim would be dismissed. As stated above, a sufficiency of the evidence claim is viewed "in the light most favorable to the prosecution." *Jackson, supra*. Under this standard, the court does not reassess credibility. This case turned on both credibility and DNA evidence. Petitioner states in the petition that "[t]his case depended on the credibility of Christian McGrath." (Pet. at 33). Although the case did not depend only on the testimony of Mr. McGrath, the jury chose to believe Mr. McGrath's and his son's testimony that one of the perpetrators was the petitioner. The DNA evidence corroborated their testimony. The jury chose not to believe the alibi testimony offered by petitioner's girlfriend. Viewed in the light most favorable to the prosecution, there was sufficient evidence to convict the petitioner.

## 4.    Ineffective Assistance of Trial Counsel (Grounds 9 & 10)[9]

Petitioner raises two bases for ineffective assistance of trial counsel.  First, he alleges that counsel failed to "use exculpatory evidence" because he failed to introduce the actual 9-1-1 recording in which Mr. McGrath stated that he did know who robbed him.  Second, petitioner alleges that his attorney was ineffective when he failed to move for dismissal of the indictment based on the prosecutor's failure to timely announce readiness for trial pursuant to N.Y. Crim. Proc. Law § 30.30.

Respondent argues that both of these claims are unexhausted, procedurally barred, and meritless. (Dkt. No. 11-1 at 23-27).  Petitioner raised these claims for the first time in his section 440.10 motion to vacate his conviction. (SR 1-48).  The petitioner specifically cited the federal constitution in both point headings and cites to *Strickland v. Washington*, 466 U.S. 668 (1984). (SR 10, 12, 13).  *Strickland* articulates the federal constitutional standard for the effective assistance of counsel.  The prosecutor responded to the petitioner's motion to vacate, and petitioner filed a reply. (SR at 49-56, 57-65).  The trial court decided both issues on the merits, mentioning both the state and federal constitutions. (SR at 68-69).

When petitioner asked for leave to appeal the denial of the section 440.10 motion to the Appellate Division, he claimed that the trial court judge used "the wrong legal standard" for ineffective assistance of counsel because the "standard *in New York* is

---

[9] Petitioner has two bases for his claim of ineffective assistance of trial counsel.  The petition lists ineffective assistance of trial counsel as Grounds Nine & Ten (Pet. at p.7, Ground No. 9 & Ground No. 10), while the petitioner's memorandum of law has ineffective trial counsel listed as Ground 4, Points A & B) (Dkt. No. 1-1 at 38-43).  For clarity, the court will label the ineffective assistance of trial counsel claims as plaintiff has designated them in the petition.

whether the defendant was denied meaningful representation." (SR at 72) (emphasis added) (citing *People v. Benevento*, 91 N.Y.2d 708, 674 N.Y.S.2d 629 (1998); *People v. Baldi*, 54 N.Y.2d 137, and *People v. Vilardi*, 76 N.Y.2d 77). Petitioner did not even include his second basis for ineffective counsel[10] in his application for leave to appeal. Although petitioner requested that the Appellate Division consolidate his direct appeal and his application for leave to appeal, the Appellate Division issued a separate order, denying leave to appeal the denial of petitioner's section 440.10 motion to vacate. (SR at 77).

By failing to include his second claim that counsel was ineffective in failing to move to dismiss petitioner's indictment based upon the prosecutor's failure to announce readiness for trial, petitioner has failed to exhaust this basis for relief.[11] A petitioner must not only raise a constitutional claim, but must appeal it's denial to the highest court available for that claim. *Baldwin v. Reese*, 541 U.S. at 29. Petitioner has also failed to exhaust his claim that defense counsel was ineffective in failing to introduce the 9-1-1 tape. While he specifically cited to *Strickland* in his motion to vacate, he stated that the trial judge applied the wrong standard because he did not base his decision on New York law. Petitioner appears to have abandoned his *Strickland* argument in his application for leave to appeal, rendering that claim unexhausted. The Second Circuit has held that raising an ineffective counsel claim based upon *People v.*

---

[10] His second basis was that counsel was ineffective when he failed to move to dismiss the indictment when the prosecutor failed to timely announce his readiness for trial.

[11] The court must also point out that the prosecutor announced his readiness for trial at petitioner's arraignment (T. 1 at 2) on September 10, 2008, and by letter dated October 6, 2008. (SR at 17). "The people remain ready for trial." (*Id.*).

*Baldi*, 54 N.Y.2d 137 does not suffice to raise a constitutional claim because *Baldi* pre-dated *Strickland. Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011).

Petitioner in this case also cited *People v. Benevento, supra. Benevento* post-dates *Strickland*, but also does not help petitioner in this case because the *Benevento* court distinguishes between the New York State standard of "meaningful representation" and the federal *Strickland* standard which requires both deficient performance and prejudice, requiring a defendant to show that there is a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). The court stated that in light of its conclusion to base the decision on the New York standard "we have no occasion to consider whether we should adopt *Strickland* . . . ." *People v. Benevento*, 91 N.Y. 2d at 715.

In *Cornell v. Kirkpatrick*, the court also held that the petitioner's "mere mention" of "ineffective assistance of counsel" without more, was insufficient to alert the New York courts to the possibility of a federal claim. 665 F.3d at 376 (citing *Baldwin v. Reese*, 541 U.S. at 32-34). In this case, the petitioner's argument that the lower court used the wrong standard, and his emphasis on New York law, shows that he knowingly abandoned his federal claim in his application for leave to appeal. Thus, both of petitioner's ineffective assistance of trial counsel claims are not exhausted.

Because petitioner cannot now return to state court and raise these claims, his ineffective counsel claims are also procedurally barred. Although petitioner raises ineffective assistance of appellate counsel, basing his argument on his failure to raise

errors of trial counsel, he has included only one of the above bases in his argument.[12] He has not based his ineffective assistance of appellate counsel on counsel's failure to raise his "readiness" claim, and that must dismissed as procedurally barred.

In addition, because this court finds that petitioner's ineffective assistance of appellate counsel claim has no merit, petitioner will have failed to show cause for the procedural default. In discussing appellate counsel claim the court will touch upon the merits of the one ineffective assistance of trial counsel claim that he does raise – the failure of counsel to introduce the 9-1-1 transcript.

## III.   Merits

Once the petitioner has surmounted all the procedural requirements attendant to an application for habeas corpus, the court may consider the merits of the petitioner's constitutional claims. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the **merits** of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir.

---

[12] A discussed below, petitioner's claim that his trial counsel was ineffective in failing to offer the 9-1-1 recording or transcript would fail on the merits, in that trial counsel was pursuing a trial strategy that would not be subject to second-guessing under *Strickland*

2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __ , 131 S. Ct. 1388, 1398 (2011) (citations omitted).

Under section 2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo. Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B.    Application

### 1.    Ineffective Assistance of Appellate Counsel (Grounds 4-8)[13]

---

[13] Respondent does not argue that petitioner failed to exhaust his remedies with respect to ineffective assistance of appellate counsel. Thus, this court will proceed to consider the merits of petitioner's claim under the AEDPA.

### a.    Supreme Court Precedent

As stated above, constitutional standard for ineffective assistance of counsel was articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-696 (1984). This test requires an affirmative showing that counsel's performance fell below an objective standard of reasonableness, and that prejudice resulted because there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 688, 694. An ineffective-assistance claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

When assessing counsel's performance, courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (quoting *Strickland*, 466 U.S. at 689). Courts should not use hindsight to second-guess sound tactical decisions made by attorneys. *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) (citing *Strickland*, 466 U.S. at 689).

In evaluating the prejudice component of *Strickland*, a "reasonable probability" that the outcome of the proceeding would have been different means "a probability sufficient to undermine confidence in the outcome." *Strickland* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Santone v. Fischer*, 689 F.3d 138, 155 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 693). Unlike the performance determination, the prejudice analysis may be made with the benefit of

hindsight. *McKee v. United States*, 167 F.3d at 106-107 (citing, *inter alia*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

A defendant has the right to effective counsel on appeal, *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and the *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). In the appellate context, counsel is not required to advance every non-frivolous argument that could be made. *Aparicio*, 269 F.3d at 95 (citing *Evitts*, 469 U.S. at 394; *Jones v. Barnes*, 463 U.S. 745, 75 (1983)). "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). To satisfy the prejudice prong of Strickland, petitioner must show that "absent [appellate] counsel's deficient performance, there was a reasonable probability that [petitioner's] appeal would have been successful before the state's highest court." *James v. Artus*, 03 Civ. 7612, 2005 WL 859245, at *14 (S.D.N.Y. Apr. 15, 2005) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).

The "AEDPA requires the federal habeas court to accord deference to the state court's ruling on claims of ineffective assistance of counsel." *Santone v. Fischer*, 689 F.3d at 154. As the Supreme Court stated in *Harrington v. Richter*, 562 U.S. 86, 105 (2011):

> The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied

28

*Strickland's* deferential standard.

(citations omitted). In addition, the AEDPA standard applies even if there has been a "summary denial" by the state court. *Id.* at 99.

### b. Application

On direct appeal, petitioner's attorney raised three issues – (1) the court erred in failing to give the requested missing witness charge; (2) the court erred in failing to require a written communication from the juror who no longer wished to serve as foreperson; and (3) the verdict was against the weight of the evidence. In his application for a writ of error coram nobis, petitioner claimed that appellate counsel should have raised ineffective assistance of trial counsel based on the following arguments:

(1)    In defiance of court order, trial counsel elicited forbidden and highly prejudicial testimony from an officer in a manner that enabled the witness to bolster inconsistent identification testimony that would have been impermissible on direct. (Ground 5) (SR at 185-91).

(2)    Trial counsel "inexplicably" failed to introduce the 9-1-1 transcripts to impeach Mr. McGrath's testimony with his prior inconsistent statement that he did not know who robbed him. (Ground 6) (SR at 192-201).

(3)    Trial counsel "inexplicably" failed to object to the prosecution's improper inference of guilt based upon facts not in evidence and not fairly able to be inferred from the evidence. (Ground 7) (SR at 202-208).

(4)    Trial counsel was ineffective when he failed to raise the "highly meritorious" issue that the "cumulative effects" of trial counsel's errors denied petitioner a fair trial. (Ground 8) (SR at 209-215).

As stated above, in order for petitioner to show that his appellate counsel was ineffective, he would have to show that the issues that petitioner raises in this petition

were "clearly stronger" than those counsel pursued on appeal. *Jones v. Barnes*, 463 U.S. at 745. As discussed below, the conduct that petitioner claims showed ineffective assistance of trial counsel could be attributed to trial strategy, not "inexplicable" errors, and appellate counsel therefore did not forego issues that were "clearly stronger" than the ones he raised on appeal. The Appellate Division did not act contrary to Supreme Court precedent in summarily denying petitioner's application for coram nobis relief.

### i. Prejudicial Testimony

Prior to trial, the court held a hearing to determine petitioner's motions based on *People v. Sandoval*;[14] *People v. Ventimiglia*;[15] and *People v. Molineaux*.[16] (Hearing Transcript ("HT") at 4).[17] The court also noted that there was a "motion in limine" which was made by the prosecutor regarding limitations on the cross examination of Mr. McGrath regarding his prior convictions.[18] (*Id.* at 4, 17). Counsel was successful in

---

[14] In New York State courts, a *Sandoval* hearing is held to determine the extent to which a defendant will be subject to impeachment by cross-examination about prior convictions if he testifies. *See People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974); *People v. Dokes*, 79 N.Y.2d 656, 660, 584 N.Y.S.2d 761 (1992).

[15] In a *Ventimiglia* hearing the court determines whether to authorize the introduction of evidence of uncharged crimes. *People v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981),

[16] *People v. Molineaux*, 168 N.Y. 264, 61 N.E. 286 (1901) provides for a hearing in which the court determines whether the prosecutor will be able to introduce evidence of prior uncharged crimes or bad acts by the defendant as affirmative proof at trial. *See Manning v. Walker*, No. 99-CV-5747, 2001 WL 25637, at *3 n.4 (E.D.N.Y. Jan. 3, 2001).

[17] The pretrial hearings do not appear to be part of the three-volume set of transcripts. Thus, the court will refer to the hearing transcript as ("HT").

[18] Based upon Mr. McGrath's extensive "rap sheet," the court was simply ruling that defense counsel would only be allowed to cross-examine on issues that would affect Mr. McGrath's credibility; but that counsel would have "ample opportunity" to impeach Mr. McGrath. (HT at 19-20). The court stated that to the extent that defense counsel wanted to "go beyond the rap sheet," the court would only

excluding at least two of petitioner's prior crimes under *Sandoval*,[19] and in obtaining other rulings under *Ventimiglia* and *Molineaux*. (*Id.* at 6-14). Petitioner also moved to exclude testimony by Sergeant Montanio regarding petitioner's ownership of a yellow Ducati motorcycle. (*Id.* at 14). Defense counsel argued that it was sufficient if Mr. McGrath testified that he knew petitioner drove a motorcycle, without the information also coming from a police officer. Counsel argued that Sergeant Montanio's knowledge had nothing to do with petitioner's identification, and the information would only contribute to the jury's knowledge that petitioner had prior dealings with police. (*Id.* at 14-15). The court ultimately held that "to the extent that the sergeant would unduly prejudice the defendant" the testimony regarding the motorcycle would "not be heard." (*Id.* at 16).

The court ruled that the prosecutor was precluded from eliciting testimony from Sergeant Montanio regarding his knowledge that petitioner drove a yellow motorcycle. However, on cross-examination of Sergeant Montanio, defense counsel asked about Mr. McGrath's identification of petitioner. Defense counsel asked whether, when Mr. McGrath told the sergeant that he recognized one of the perpetrators' voices as belonging to "Miles," it was Sergeant Montanio who "suggested the last name of Lewis." (T. 2 at 184-86). Sergeant Montanio conceded that he did suggest petitioner's last name. (*Id.*) Sergeant Montanio also admitted that he had "run-ins" with Miles before, and that he had arrested Miles before. (*Id.* at 186).

_____

permit questioning that was not repetitive or cumulative. (*Id.* at 20-21).

[19] Petitioner did not take the stand in this case, but counsel was still partially successful in obtaining the *Sandoval* rulings.

On redirect examination, the prosecutor elicited from Sergeant Montanio that petitioner drove a yellow motorcycle, a fact that had been established through Mr. McGrath.[20] (McGrath: T. 2 at 67; Montanio: T. 2 at 194). Petitioner argues that his counsel was ineffective for asking questions that opened the door to allowing the prosecutor to inquire about evidence that had been precluded by the court. Petitioner also argues that the cross-examination testimony implied that petitioner was a "bane to the community," and argues that appellate counsel was ineffective for failing to raise this issue as a basis for ineffective assistance of trial counsel. (Pet. Mem. of Law at 44).

While it is true that defense counsel "opened the door" to testimony that the court had precluded as part of the prosecution's case, there was a trial strategy for counsel's questioning. Petitioner's defense was that Mr. McGrath was trying to frame him because of a disagreement that he had with petitioner. Petitioner was also trying to show that Mr. McGrath had a history of such accusations against other individuals.[21] Counsel obtained a concession from Sergeant Montanio that *he* suggested petitioner's last name to Mr. McGrath after Mr. McGrath described his attacker and identified him only by the first name "Miles." Counsel was attempting to strengthen the petitioner's defense that Mr. McGrath and the officers identified petitioner based on his local criminal history. The only way to do that was to accept the testimony that Sergeant

---

[20] The importance of the motorcycle testimony was that Mr. McGrath testified that when the perpetrators ran out, he heard a motorcycle taking off. (T. 2 at 66).

[21] During counsel's summation, this defense strategy is emphasized. (T. 3 at 150). Counsel suggested that maybe the recognition of petitioner "didn't come until later that he is processing something and that he gets it stuck in his head, gosh, who did I have a dispute with recently? Who could have possibly done this? Miles is mad at me so maybe it was him. Yeah, yeah, that's it. . . ." (*Id.*)

Montanio knew who petitioner was, even if that implied that petitioner had a prior criminal history.  Any "prejudice" to petitioner was outweighed by attempt to reinforce petitioner's defense.[22]  Thus, appellate counsel was not ineffective in failing to raise this issue, and the Appellate Division did not act contrary to Supreme Court precedent in denying petitioner's application for coram nobis relief on this basis.

### ii.    Impeachment Evidence

Petitioner argues that his trial counsel was ineffective when he failed to introduce the 9-1-1 transcript which would have impeached Mr. McGrath's testimony that he knew that petitioner was one of the perpetrators.  It is true that defense counsel did not "introduce" the 9-1-1 transcript during his cross-examination of Mr. McGrath.  However, he did question Mr. McGrath extensively about the 9-1-1 call.  Counsel asked Mr. McGrath whether it was true that he first told the 9-1-1 operator that he didn't know who the perpetrators were, and then during the second call, he stated that he thought he knew who it was.  Mr. McGrath stated that he did not remember what he told the 9-1-1 operator.  Far from bolstering Mr. McGrath's testimony, defense counsel did an admirable job getting Mr. McGrath to admit that he did not remember what he said, and counsel left the impression with the jurors that Mr. McGrath made up his mind later that it was petitioner because he wished to frame him.

In fact, based on counsel's summation, it is clear that he did not want to introduce the transcript because he began his summation by criticizing the prosecutor for failing to introduce the 9-1-1 tape itself.  The court overruled the prosecutor's

---

[22] Petitioner's girlfriend testified that petitioner's nephew had petitioner's motorcycle that night. (T. 3 at 76-77).

objection, and defense counsel stated:

> Why didn't we hear a 9-1-1 recording? . . . Well, it is
> important because you remember some of those questions I
> asked Chris and Anthony about, . . . calling 9-1-1? . . . I said .
> . . did you talk to the 9-1-1 operator? Isn't it true you told the
> 9-1-1 operator in response to their question who robbed you?
> I don't know. I don't know what I told the 9-1-1 operator. . . .
> What better piece of evidence could we possibly have than the
> actual tape, itself, so you can determine whether Chris is
> being truthful with you or Anthony is being truthful with you
> or if they're mistaken, if they're wrong, whatever. . . . Why
> wasn't it there? What are they afraid of? Why didn't they put
> that piece of evidence into play? . . . . Remember, it is not my
> job to present the evidence. It is not my job to produce that
> recording. It is their job. It is part of their case.

(T. 3 at 133-34). Petitioner argues that counsel "inexplicably" failed to introduce this evidence. However, counsel clearly had a strategic reason for not introducing the 9-1-1 transcript itself. He wanted to put doubt into the minds of the jurors about why the tape was not introduced by the prosecutor, particularly when Mr. McGrath admitted on cross-examination that he did not know what he said to the operator during the first telephone call. (McGrath: T. 2 at 106-107). This fact becomes clear during counsel's summation. (T.3 at 136). The court does not second-guess matters of trial strategy, and appellate counsel was not ineffective in failing to raise this issue on appeal as a basis for ineffective assistance of trial counsel.

### iii. Improper "Inference" of Guilt

Petitioner argues that trial counsel improperly and "inexplicably" failed to object when the prosecutor elicited testimony from Mr. McGrath about a previous theft of $13,000.00 from his home a few months before the incident in this case. (Pet. at 49).

34

Petitioner believes that although Mr. McGrath testified that this burglary was committed by an acquaintance named "Chuck," somehow "the prosecutor improperly inferred that Petitioner was guilty" because petitioner was the only person who possessed such detail about Mr. McGrath's home and about his habit of leaving large amounts of cash in the house. (*Id.*)

Once again, counsel's actions can be considered a matter of trial strategy which supported petitioner's theory that Mr. McGrath accused other people of committing thefts at his home. McGrath testified that he told the police that a neighbor named "Chuck" previously stole $13,000.00. It is unclear how plaintiff assumes that this conveys to the jury that prosecutor wanted the jury to believe that petitioner committed that crime too. Mr. McGrath knew petitioner's name, and if he wanted to implicate petitioner, he would not have accused someone named "Chuck."

In fact, counsel took advantage of this testimony on cross-examination when he asked Mr. McGrath whether he was robbed at his home on May 19, 2008. (McGrath: T.2 at 114). Mr. McGrath testified that the individual who he accused of the theft was "Chuck," and that he reported the theft to the police. (*Id.*) Far from implicating the petitioner, this testimony supported an inference that "Chuck" may have committed the July 20, 2008 burglary. Counsel argued on summation that because Mr. McGrath did not initially identify the petitioner by name, and because McGrath accused Chuck of the earlier robbery, the prosecutor did not meet his burden of proving that petitioner was one of the perpetrators. Trial counsel did not err in failing to object to this line of questioning on direct, and did not err in continuing the line of questioning on cross.

The Appellate Division did not act contrary to well-established Supreme Court precedent in denying petitioner's motion for coram nobis relief.

### iv.    Cumulative Errors

Petitioner also argues that appellate counsel should have argued that the cumulative effect of the errors committed by trial counsel violated petitioner's constitutional right to the effective assistance of counsel. (Pet. at 50-51).  Because this court has found that the attorney conduct cited by petitioner was not error, petitioner's last claim must also fail.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 11, 2015

<u>_Andrew T. Baxter_</u>
**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**